# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KNIGHT SPECIALTY INSURANCE COMPANY, | No. 4:24-CV-00465 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| INSA, INC., | |
| Defendant. | |
| INSA, INC., | |
| Third Party Plaintiff, | |
| v. | |
| QUADSCORE INSURANCE SERVICES, | |
| Third Party Defendant. | |

## MEMORANDUM OPINION

### May 20, 2025

**I.     BACKGROUND**

On August 23, 2023 a fire occurred at Insa, Inc.'s ("Insa") marijuana cultivation facility; Knight Specialty Insurance Company ("Knight Specialty") had previously issued a Commercial Property policy for this facility.[1] On March 18,

---

[1]   Compl., Doc. 1 ¶¶ 1, 2, 9, 17.

2024, Knight Specialty commenced a declaratory judgment action against Insa,[2] prompting Insa to file counterclaims against Knight Specialty and a third-party complaint against Quadscore Insurance Services.[3] Presently before the Court is Insa's February 17, 2025 Motion to Compel Discovery.[4] That motion is now ripe for disposition. The Court denies the motion in part and reserves judgment on the remaining issues pending its *in camera* review of certain documents.

**II.   STANDARD**

"Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process."[5] "Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by"[6] by Federal Rule of Civil Procedure 26, which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information

---

[2]   *Id.* ¶¶ 30-39.
[3]   Third-Party Compl., Doc. 11; Answer with Counterclaim, Doc. 12.
[4]   Motion to Compel, Doc. 30.
[5]   *Schiavone v. Luzerne Cty.*, 343 F.R.D. 34, 37 (M.D. Pa. 2023) (Mehalchick, C.M.J.) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987)).
[6]   *Schiavone*, 343 F.R.D. at 37 (quoting *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 U.S. Dist. LEXIS 193191, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015)).

within this scope of discovery need not be admissible in evidence to be discoverable.[7]

"The party seeking the discovery has the burden of clearly showing the relevancy of the information sought."[8] "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1) or (ii) is not sufficiently relevant to justify the burden of producing the information."[9]

## III. DISCUSSION

At the outset, I note that Insa failed to follow the appropriate procedures when filing this motion. Federal Rule of Civil Procedure 16(b)(3)(B)(v) provides that a "scheduling order may: . . . (v) direct that before moving for an order relating to discovery, the movant must request a conference with the court."[10] That is precisely what the Court's September 25, 2024 Case Management Order has done.[11] Despite this clear instruction, Insa immediately filed its Motion to Compel on February 17, 2025.

---

[7] FED. R. CIV. P. 26.
[8] *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).
[9] *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019).
[10] FED. R. CIV. P. 16.
[11] Case Management Ord., Doc. 29 ("If a discovery dispute arises, counsel shall electronically docket a letter apprising the Court of the dispute's general contours. Upon receipt of that letter, the Court may schedule a conference if necessary. No discovery motions may be filed without express permission of the Court.").

This directive is not merely an arcane procedural requirement. These discovery conferences are "an efficient way to resolve most discovery disputes without the delay and burdens attending a formal motion . . . ."[12] This serves the dual purpose of preserving limited judicial resources and avoiding costly delays in the litigation. By directly filing its motion, Insa unnecessarily prolonged the time required to resolve these disputes, as exemplified by Knight Specialty's various concessions in its brief in opposition. Be that as it may, the Court will now resolve the Motion to Compel.

### A. Resolved Discovery Issues

#### 1. Requests for Admission Numbers 1, 2, 3, 4, and 5

The disputes involving Requests for Admission Numbers 1, 2, 3, 4, and 5 have been resolved as Knight Specialty has agreed to provide these responses "at its earliest opportunity."[13]

#### 2. Requests for Production Numbers 13, 14, 15, and 16

Regarding Requests for Production Numbers 13, 14, 15, and 16, Knight Specialty agreed to produce these documents to the extent that it possesses responsive documents subject to a confidentiality agreement. As such, the parties will be directed to file a stipulated confidentiality agreement. In its Reply Brief, Insa

---

[12] FED. R. CIV. P. 16 advisory committee's note (2015).
[13] Brief in Opposition, Doc. 31 at 4.

takes issue with "this caveat" of possession.[14] Insa asserts this "provide[s] cover in the case that the handling adjuster cannot find" the documents at issue after asserting that the responsive contracts "are clearly in Knight Specialty's possession."[15] But Knight Specialty's response adequately assures the Court it intends to cooperate with this request, and Insa's seemingly unfounded concerns cannot overcome Knight Specialty's obligation to fulfill its representations to the Court.

### 3. Request for Production Number 20

In response to Request for Production Number 20, Knight Specialty asserts that it "does not have any documents responsive to the request seeking documents which establish, show, and/or relate to Knight Specialty's definition of the term 'smoke detectors.'"[16] Insa contends that "there is no evidence that Knight Specialty has undertaken any search of its documents beyond what is maintained in the claim file" and that "[i]t will have coverage communications regarding the definition of 'smoke detectors' as this is a dispute that has undoubtedly arisen in previous claims."[17] Without any explanation from Insa as to why the Court should doubt Knight Specialty's representation beyond mere speculation, I deny the Motion to Compel as to this request for production.

---

[14] Rely Brief, Doc. 32 at 2.
[15] *Id.*
[16] Doc. 31 at 6.
[17] Doc. 32 at 2.

### 4. Request for Production Number 22

Request for Production Number 22 concerns "[d]ocuments and communications that relate to the change from QS CP 10 01 06 22 in the 2022-2023 Policy to the QS CP 10 01 10 22 in the Policy at issue in this dispute."[18] Knight Specialty has indicated that Quadscore, "as the Managing General Agent, underwrote the Knight Specialty Policy" and this request "is better directed to Quadscore, which is a party to this litigation."[19] Knight Specialty further asserts it "does not otherwise have documents responsive to this request."[20]

After acknowledging that Quadscore's possession of these documents would be "an acceptable resolution," Insa contends that "until filing its reply Knight Specialty refused to provide any documentation or information on the subject."[21] Further, "[t]here is no clarity as to the search that was undertaken" and Insa requests that "[a]t a minimum, Knight Specialty should be ordered to search communications of the individuals at Knight Specialty who communicated with Quadscore regarding form updates."[22] Again, at this juncture, Insa has identified no reason that the Court should assume that Knight Specialty is making these representations in bad faith. Accordingly, I deem this matter resolved for purposes of this motion.

---

[18] Requests for Production, Ex. 5, Doc. 30.
[19] Doc. 31 at 6.
[20] *Id.*
[21] Doc. 32 at 2-3.
[22] *Id.*

### B. The Unresolved Discovery Disputes

Now, I shall turn to the remaining issues that have not been resolved by Knight Specialty's response. In doing so, I first decline to strike all of Knight Specialty's so-called boilerplate objections. While the objections are certainly lacking some detail, they are not so insufficient as to justify this extreme request.

#### 1. Request for Production Number 23

Request for Production Number 23 seeks "[d]ocuments and communications arising from and/or related to Your subrogation efforts related to this Claim. We anticipate Your response will include factual findings, expert opinions, document productions, payments received and/or made, and non-privileged communications by and with Cozen O'Connor regarding."[23] In response, Knight Specialty claimed the documents are protected by the attorney client and work product privileges and that the requests are overly broad and unduly burdensome.[24] I take up each of these objections in turn.

##### a. Relevance

To be discoverable, the subrogation files must first be relevant.[25] Insa correctly contends that these materials "go to the heart of the case"[26] as the very

---

[23] Requests for Production, Ex. 5, Doc. 30.
[24] *Id.*
[25] *Fassett v. Sears Holding Corp.*, 319 F.R.D. 143, 149 (M.D. Pa. 2017) (citing *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000)).
[26] Doc. 30 at 15.

subject of the subrogation investigation is key to the outcome of Knight Specialty's declaratory judgment action and Insa's counterclaims.

### b.     Broadness and Unduly Burdensome

Next, I consider whether the requested discovery is overly broad or burdensome. Despite acknowledging that the scope of discovery "is not without limits" and that parties may not "engage in a fishing expedition,"[27] Knight Specialty advances no arguments regarding the breadth of this request for production. As such, I consider this argument to be forfeited for purposes of this motion.

### c.     Privilege

Given these conclusions, I must now evaluate whether the requested documents are subject to the attorney client privilege or work product doctrine. In its opposition brief, Knight Specialty indicates that "[p]ortions of the document production . . . included documents that pertain solely or in part to the subrogation investigation and which Knight Specialty properly redacted" as they "involved attorney-client correspondence between Knight Specialty's subrogation counsel and Knight Specialty's adjuster."[28] Apparently, these "redactions were properly noted in Knight Specialty's privilege log . . . ."[29]

---

[27] Doc. 31 at 7.
[28] *Id.* at 7-8.
[29] *Id.* at 8.

As to the privilege objection, Insa merely asserts it only "seeks the facts contained in the withheld documents."[30] "These are the opinions regarding fire causation, the payments that may have been made (if any), document productions between Knight Specialty and subrogated parties, etc."[31]

The attorney client privilege[32] "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client."[33] To invoke the attorney client privilege under Pennsylvania law, Knight Specialty must show the following elements:

> [First,] [t]he asserted holder of the privilege is or sought to become a client.
>
> [Second,] [t]he person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> [Third,] [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> [Fourth,] [t]he privilege has been claimed and not waived by the client.[34]

---

[30] Doc. 30 at 15.
[31] *Id.*
[32] Knight Specialty presented no argument that these documents were protected by the work product doctrine. Accordingly, the Court only analyzes the attorney client privilege.
[33] *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014).
[34] *Knopick v. Dennis Boyle & Boyle Litig.*, 189 A.3d 432, 440 (Pa. Super. Ct. 2018) (quoting *Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 376 (Pa. Super. Ct. 2012), *appeal denied*, 57 A.3d 71 (2012)).

In other words, the attorney client privilege applies to "(1) a communication (2) made between [the client and the attorney or his agents] (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client."[35]

But "[t]he party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege. Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. Accordingly, [i]f the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege."[36]

The entirety of Knight Specialty's argument is that the redacted documents "involved attorney-client correspondence between Knight Specialty's subrogation counsel and Knight Specialty's adjuster" and that these redactions were noted in the contemporaneously produced privilege log.[37] Given Knight Specialty's failure to meet its initial burden, the Court will require it to submit the allegedly privileged documents for *in camera* review.[38]

---

[35] *Walter v. Travelers Pers. Ins. Co.*, No. 4:12-CV-346, 2013 WL 2252729, 2013 U.S. Dist. LEXIS 72771, at *7 (M.D. Pa. May 22, 2013) (Carlson, M.J.) (quoting *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)).
[36] *Clemens v. NCAA (In re Estate of Paterno)*, 168 A.3d 187, 194 (Pa. Super. Ct. 2017).
[37] Doc. 31 at 8.
[38] *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-179, 2017 WL 4403326, 2017 U.S. Dist. LEXIS 162131, at *9 (W.D. Pa. Oct. 2, 2017) (collecting cases).

### 2. Request for Production Number 8

In Request for Production Number 8, Insa seeks the "[c]overage opinion(s) You relied upon when making decisions related to Insa's Claim."[39] Knight Specialty again contends these documents are protected by the attorney client privilege and work product doctrine.

Knight Specialty correctly observed that the attorney client privilege is only waived when the party asserts an advice of counsel defense, which it has represented it does not intend to do.[40] The Court also agrees that directing Insa to a published opinion in a similar case is insufficient to waive the attorney client opinion, especially not for the entirety of the coverage opinion. But Knight Specialty has not addressed whether the coverage opinion is merely business advice.[41] As such, I will review these documents as well before reaching a determination on this portion of the Motion to Compel.

### IV. CONCLUSION

Insa's Motion to Compel is denied in part as Knight Specialty has either agreed to produce the requested documents or Insa has failed to cast sufficient doubt on Knight Specialty's representations to the Court. The remaining aspects of

---

[39] Requests for Production, Ex. 5, Doc. 30.
[40] *E.g.*, *Mueller v. Nationwide Mutual Ins. Co.*, 31 Pa. D. & C. 4th 23 (Allegheny Cnty. C.C.P. 1996).
[41] *E.g.*, *JCT Leasing, LLC v. Travelers Cas. Ins. Co. of Am.*, 52 Pa. D. & C. 5th 449 (Monroe Cnty. C.C.P. 2015).

the motion will be resolved by the Court in a separate memorandum opinion following its review of the relevant documents.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge